UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SUFFOLK REGIONAL OFF TRACK
BETTING CORP.,

                *Plaintiff*,

      -against-

THE UNITED STATES SMALL BUSINESS
ADMINISTRATION, ISABEL CASILLAS GUZMAN
*in her official capacity as Administrator of the
United States Small Business Administration*, and
THE UNITED STATES OF AMERICA,

                *Defendants*.
-------------------------------------------------------------X

**ORDER**

24-cv-07058 (SJB) (JMW)

**A P P E A R A N C E S:**

    Elliot Aaron Hallak
    Deana DiBenedetto
    **Harris Beach Murtha Cullina PLLC**
    677 Broadway, Suite 1101
    Albany, New York
    *Attorneys for Plaintiff*

    Edward K. Newman
    **United States Attorneys Office, EDNY**
    271 Cadman Plaza East
    Brooklyn, New York 11201-1820
    *Attorney for Defendants*

**WICKS,** Magistrate Judge:

        A bedrock principle of judicial review of administrative decisions is that the reviewing court consider only the record presented to the agency at the time the decision was rendered. Discovery, therefore, in administrative review cases is considered a rare exception. The burden

1

– which is indeed a heavy one – rests with the party seeking discovery to show either bad faith or that documents were shown to have been considered in the agency that were omitted from the record. Before the Court is Plaintiff's application for discovery. Because Plaintiff did not meet this heavy burden, the application must be denied for the reasons that follow.

## BACKGROUND

Plaintiff Suffolk Regional Off Track Betting Corporation ("SROTB"), a public benefit corporation that operates a legal gaming business in Suffolk County commenced the underlying action pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 702–704 against the Small Business Administration ("SBA"), Kelly Loeffler[1] ("Loeffler"), in her official capacity as Administrator of the United States Small Business Administration ("Administrator"), and the United States of America ("United States") (collectively "Defendants") seeking judicial review and reversal of decisions rendered by the SBA and its Office of Hearing and Appeals ("OHA"), which denied forgiveness of an SBA loan obtained by SROTB pursuant to the Payment Protection Program ("PPP"). (*See generally* ECF No. 1.)

Amidst the COVID-19 pandemic, on March 27, 2020, President Trump enacted H.R. 748 "Coronavirus Aid, Relief, and Economic Security Act" (the "CARES Act") which provided relief to alleviate economic devastation caused by the pandemic. (*Id.* at ¶ 17.) The PPP was a temporary SBA loan program designed to assist small businesses by guaranteeing loans made to eligible borrowers by private lenders to keep working Americans paid, employed, and prevent unemployment. (*Id.* at ¶¶ 17-19; ECF No. 33 at 1.)

---

[1] Kelly Loeffler was sworn in as the new Administrator of the SBA on February 20, 2025, and is substituted as defendant in place of Isabel Casillas Guzman, former Administrator of the SBA named in the Complaint. (*See* ECF No. 1; ECF No. 19 at 1.)

2

The CARES Act explicitly provides "'any business concern . . . shall be eligible to receive a covered loan' if it had fewer than 500 employees during a specified covered period[]" and "did not provide any further limitations or qualifiers for an eligible business." (ECF No. 1 at ¶ 20 (*quoting* 15 U.S.C. § 636(a)(36)(D)(i)).) On June 19, 2020, SROTB executed the PPP Borrower application form and applied to the SBA for a loan in the amount of $3,978,827.00. (ECF No. 1 at ¶44.)

Plaintiff argues as a small business with "fewer than 500 employees, SROTB operated under the good faith belief that they were eligible for a PPP loan" and the proceeds received from the Loan could be used to retain employees. (*Id.* at ¶ 45.) Plaintiff, along with other OTB entities in the State, operated under the shared expectation that their PPP loans would be forgiven so long as the funds were used as required. (*Id.*) However, forgiveness was granted only to the other entities[2], not to SROTB. (*Id.*) On July 21, 2020, Plaintiff's PPP Application was approved for the full amount of $3,978,827.00 which was "fully utilized . . . to pay the salaries of its essential employees and cover health insurance for its furloughed employees during the closure period." (*Id.* at ¶¶ 48-49.) On January 29, 2021, Plaintiff submitted a Loan forgiveness application. (*Id.* at ¶61.) In response, they received a notice on October 16, 2023, from the United States Department of the Treasury for immediate collection stating SROTB owes the United States $5,256,935.24. (*Id.* at ¶ 62.) SROTB filed an appeal petition to the U.S. Small Business Administration Office of Hearings and Appeals (OHA) on November 14, 2023. (*Id.* at ¶

---

[2] Plaintiff argues the SBA has granted forgiveness to other OTB and gaming entities including all four of the other existing New York OTBs: Capital OTB, Western OTB, Nassau OTB, and Catskill OTB. (ECF No. 1 at ¶ 113.) As well as other similar entities throughout the nation including Arizona Downs LLC; Downs at Albuquerque Inc.; Emerald Downs Racing LLC; Fonner Park Exposition and Events Center, Inc.; Hawthorne Race Course, Inc.; Kentucky Downs, LLC; Northern California Off Track Wagering Incorporated; Tampa Bay Downs; and Wyoming Horse Racing LLC. (*Id.* at ¶ 106.)

67.) Following Administrative Law Judge Kenneth M. Hyde's Notice and Order dated December 11, 2023, the SBA filed the administrative record on December 26, 2023, along with a supplement to the record which included an exhibit which had been previously omitted. (*Id.* at ¶¶ 68-69.) On April 12, 2024, SROTB filed a Petition for Reconsideration, which Judge Hyde denied on August 6, 2024. (*Id.* at ¶¶ 75-76.) Judge Hyde denied SROTB's appeal and affirmed the Final Loan Review Decision denial of the PPP Loan forgiveness. (*Id.* at ¶ 72.)

On March 10, 2025, Plaintiff suggested in a pre-motion conference request that it is entitled to discovery before summary judgment practice. (*See* ECF No. 22; *see* Electronic Order dated May 6, 2025.) District Judge Sanket J. Bulsara noted that "discovery is rarely available in an APA action, though available by making a heightened showing consistent with the nature of federal court review of agency action." (Electronic Order dated May 6, 2025.) As such, Judge Bulsara referred the parties to the undersigned to resolve the question of whether discovery is appropriate in this case and, if so, what the scope of that discovery would be. (*Id.*)

Plaintiff argues SROTB is entitled to discovery because Defendants "arbitrarily and capriciously" denied their loan forgiveness application and did not provide enough documentation to examine and object to the SBA record. (*See* ECF No. 31.) In contrast, Defendants argue that any alleged procedural error in the agency's decision speaks to the merits of the decision, and not whether the decision was made in bad faith. Therefore, discovery is not justified. (*See* ECF No. 33.) Additionally, Defendants argue there is no showing that "materials that were part of the administrative record and were relevant to the AJ's decision are missing from the record." (*Id.* at 4.)

4

## **DISCUSSION**

SBA claims it denied SROTB's PPP loan forgiveness because SROTB has an ineligible organizational structure because they are owned by a municipality.[3] (ECF No. 31 at p. 2.) However, SROTB argues the other five remaining OTB facilities in NY, which were all granted PPP forgiveness, are all "public benefit corporations created by legislation whose members are appointed by government bodies." (*Id.*) Therefore, SROTB has the same organizational structure as the other OTB granted forgiveness and therefore has no distinguishable circumstances warranting a different result. (*Id.*) SROTB further argues that SBA failed to demonstrate in the record why other OTB were granted PPP forgiveness, and how SROTB differs from the other OTB that would warrant different treatment. (*Id.* at pp. 2–3.) Accordingly, Plaintiff argues that they should be able to elicit such information through discovery as it would "bear critically on whether SBA acted arbitrarily and capriciously in denying SROTB forgiveness." (*Id.* at p. 4.)

Plaintiff next argues that SBA failed to explain why it did not follow the determinations by its own staff that SROTB should be eligible for PPP loan forgiveness. (*Id.* at p. 3.) Plaintiff points to multiple places in the record to demonstrate that SBA staff concluded that SROTB was eligible and approved for forgiveness "on multiple occasions." (*Id.* at p. 3.)

However, Plaintiff's support is contradictory. For example, ECF No. 1-4 at pp. 6–12, which was cited by Plaintiff to support the proposition that SBA staff recommended that Plaintiff be approved for loan forgiveness, demonstrates four different employees recommending that the SBA deny the application for PPP loan forgiveness. (ECF No. 1-5 at pp. 8–10.) Pages 22–23 also

---

[3] Plaintiff cites ECF No. 1-2, which is SBA's denial letter, to support this proposition. "Per SOP 50.10.5(k), Subpart B.2. III.A.10. Government-Owned Entities, Excluding Native American Tribes (13 CFR § 120.110(j)) a. Businesses owned by municipalities and other political subdivisions are not eligible." (ECF No. 1-2 at p. 3.)

show three employees concurring with the denial with accompanying explanations for their concurrence. (*Id.* at pp. 22–23.) Admittedly, one employee, Angela McManus, recommended partial forgiveness of $3,498,624. (*Id.* at p. 24.)[4] However, this same employee later recommended the denial without a substantive explanation. (*Id.* at p. 8.)

Accordingly, Plaintiff seeks discovery to understand why these staff recommendations were not followed, as they argue the record is not sufficient to explain the "complete reversal of position resulting in the denial of forgiveness." (ECF No. 31 at p. 3.) Plaintiff further argues that the record fails to demonstrate why Plaintiff is being charged thirty percent interest or fees, when the original loan interest rate was one percent. (ECF No. 1 at ¶¶ 137–139.) Plaintiff, therefore, argues that it requires discovery because it does not know "how those figures were calculated, particularly the appropriateness of the extensive apparent late fees or penalties totaling over $1.3 million." (ECF No 31 at p. 3.)

Defendants flatly deny the SBA acted in bad faith when issuing its decision. (ECF No. 33 at 3.) In order for a plaintiff to establish bad faith, "naked assertions" of bad faith are insufficient and there must be a "prima facie" showing that discovery will "reveal material in the agency's possession that demonstrates bad faith." *Ali v. Pompeo*, No. 16-CV-3691-KAM-SJB, 2018 WL 2058152, at *5 (E.D.N.Y. May 2, 2018) (*quoting Citizens Against Casino Gambling In Erie Cty. v. Stevens*, 814 F. Supp. 2d 261, 265 (W.D.N.Y. 2011)); *Ambac Resorts, LLC v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)). In *Ali*, plaintiff argued that a document in which an agency relies upon to issue their final decision was a statement made through coercion, and thus the agency shows bad faith in relying on it. 2018 WL 2058152, at *6. The court held that the agency's reliance on a document that one party believes to be "fraudulent" or "inauthentic" does

---

[4] Plaintiff incorrectly cites page ECF No. 1-5 at p. 19. The Court construes this as Plaintiff's intention to cite ECF No. 1-5 at p. 24 instead.

6

not constitute bad faith but rather is an argument that the agency's decision was based on insubstantial evidence or that its decision was "arbitrary or capricious." *Id.* The court stated that this type of argument is essentially that the final decision was incorrect, which went to the merits of the decision, rather than a showing of bad faith. *Id*.

Here, Defendants rely on *Ali* arguing that the same line of reasoning applies and that Plaintiff's allegations that the "ALJ erred by not admitting evidence of how loan forgiveness applications for other OTB operations were treated by SBA" speaks to whether the agency's decision was correct rather than whether the agency acted in bad faith. (ECF 33 at p. 3.) Defendants emphasize that a disagreement on the merits of the decision does not warrant discovery on the basis of bad faith and instead would be properly argued in a motion for summary judgment. *Id*.

Additionally, further discovery is not justified on the ground that documents are missing from the administrative record. The exception allowing supplementation of an incomplete administrative record only applies in situations where "documents were considered by decision-makers at the agency . . . but were omitted from the administrative record." *Ali*, 2018 WL 2058152, at *10 (*quoting State of N.Y. v. Shalala*, No. 93-CV-1330, 1996 WL 87240, at *6 (S.D.N.Y. Feb. 29, 1996)). Defendants once again rely on the facts in *Ali*, where plaintiff made a similar argument that certain documents were missing from the record that he feels *should have been* included. *Id.* at *11. However, the court held no evidence that the allegedly missing documents were actually considered in the agency's decision making, and any argument that the documents were considered but not included was merely speculation. *Id*.

A court reviewing an agency decision is typically limited to the administrative record. *Ali v. Pompeo*, 2018 WL 2058152, at *4 (*quoting Nat'l Audubon Soc. v. Hoffman*, 132 F.3d 7, 14 (2d

7

Cir. 1997)). However, discovery beyond the administrative record is appropriate under limited circumstances, namely where there is either "a strong showing of bad faith or improper behavior on behalf of the agency decision-makers" or there is a "formal absence of administrative findings," in which discovery is necessary to understand the rationale for the agency's decision. *Id*. (*quoting Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)). Even when discovery is justified, it is limited in scope to provide only enough information to allow the court to properly review the agency's decision, and the typical procedure is to "remand to the agency" rather than resort to court supervised discovery. *Id*. (*quoting Nat'l Audubon Soc.*, 132 F.3d at 14; *Fla. Power & Light Co.*, 470 U.S. at 744)).

> The court in *Ali*, succinctly summarized the standard of review:
>
> To obtain the discovery [the plaintiff] now seeks, [plaintiff] would have to establish either bad faith or that with the current record the Court could not review the reasons for the decision [of the administrative law judge]. If such a showing could be made, [plaintiff] would still have to demonstrate that the discovery sought was limited to effectuating judicial review under Section 706, and also show that this Court should conduct the discovery, as opposed to remanding the case to the [the administrative judge] to conduct any additional factfinding or inquiry.

*Ali*, 2018 WL 2058152, at *5.

Further, [a] court will not 'ascribe . . . nefarious motives to agency action as a general matter.'" *Id*. (quoting *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2009)). Instead, "a party must make a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith[.]" *Id.* (quoting *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F.Supp.2d 7, 12 (D.D.C. 2001)).

Here, Plaintiff argues that the ALJ erred in declining to review documents, such as the loan forgiveness records for other OTB entities, that Plaintiff averred the ALJ should have reviewed. Plaintiff, however, has not shown that that these documents were considered by the

8

ALJ in its decision-making process, despite believing that they should have been. Additionally, Plaintiff fails to address bad faith. It the absence of bad faith, coupled with the fact that no documents were shown to have been considered in the agency's decision that were omitted from the record, the heightened standard necessary to overcome the presumption of no discovery in this APA action has not been overcome. Mere inconsistencies in the administrative record do not equate to bad faith but rather only goes to whether the underlying decision was arbitrary and capricious and should be overturned.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's application for discovery is denied. Accordingly, the parties are directed to submit a proposed schedule for summary judgment briefing, consistent with Judge Bulsara's Individual Practices, on or before **August 7, 2025**.

Dated: Central Islip, New York
July 31, 2025

S O   O R D E R E D:
/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

9